UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

                                              **DECISION AND ORDER**
                                                  09-CR-19A

        v.

RYAN WARME,

                      Defendant.

---

This case was referred to Magistrate Judge Hugh B. Scott pursuant to 28 U.S.C. § 636(b)(1)(A). On May 28, 2009, defendant filed motions to dismiss Counts One, Six, and Eight of the indictment; to strike language from Count One of the indictment; and to sever Counts Two through Six from the remaining counts for trial purposes.[1] On August 26, 2009, Magistrate Judge Scott filed a Report and Recommendation, recommending that defendant's motions not concerning severance be denied. In a separate Decision and Order dated

---

[1]Technically, these motions addressed the Government's first superseding indictment of March 26, 2009. On August 6, 2009, the Government filed a second superseding indictment containing the same eleven counts in the same order. Magistrate Judge Scott acknowledged the second superseding indictment in his Report and Recommendation. Because the two superseding indictments are sufficiently identical for purposes of defendant's pending motions, this Court will refer to the second superseding indictment as "the indictment" and will treat the Report and Recommendation, and all of defendant's pending motions, as if they address the second superseding indictment.

August 26, 2009, Magistrate Judge Scott deferred to this Court with respect to the motion for severance, which defendant renewed in a filing dated October 13, 2009.

Defendant filed objections to the Report and Recommendation on October 13, 2009, and the Government filed a response thereto. Defendant objected to the recommendations to deny his motions to dismiss Counts One and Six. Defendant did not object to the recommendation to deny his motion to dismiss Count Eight. Oral argument on the objections and the motion for severance was held on December 10, 2009.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 59(b)(3) of the Federal Rules of Criminal Procedure, this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon such a *de novo* review of the Report and Recommendation, and after reviewing the submissions and hearing argument from the parties, the Court adopts the proposed findings of the Report and Recommendation with respect to Count Eight but declines to do so with respect to Counts One and Six, as noted below. The Court also will grant the motion for severance.

## DISCUSSION

### *Motions to Dismiss Generally*

"It is well settled that an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge

2

against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *U.S. v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (internal quotation marks and citation omitted). Defendant, through his objections, has challenged the legal sufficiency of Counts One and Six. The parties have not indicated that discovery is complete at this point. The Court has not scheduled a trial date. "It should not be necessary to mention the familiar rule that, at this stage of the case, the allegations of the indictment must be taken as true." *Boyce Motor Lines v. U.S.*, 342 U.S. 337, 343 n.16 (1952). Accordingly, the Court will take the language of Counts One and Six at face value as it assesses defendant's motions to dismiss them.[2]

### *Count One*

Count One charges defendant with committing wire fraud against the citizens and government of the City of Niagara Falls. According to Count One, defendant purchased cocaine and crack cocaine for himself on numerous occasions, including while on duty and in possession of his police-issued firearm; provided his drug suppliers with confidential police information to help them avoid arrest; engaged in sexual activity and other personal business and activities while on duty; engaged in unlawful sexual conduct while armed with his police-issued firearm; and issued threats to prevent witnesses with knowledge of his criminal

---

[2]Because Counts One and Six are assumed to be true for purposes of the motions to dismiss them, the Court, for the sake of clarity, will avoid repeated use of the word "alleged" when describing the facts asserted therein.

activities from reporting those activities to his superiors at the Niagara Falls Police Department. The Government maintains that defendant's conduct amounted to wire fraud because he purchased cocaine and crack cocaine by making automated teller machine ("ATM") withdrawals locally from a bank account maintained by the USAA Federal Saving Bank in the state of Texas. The Government states in Count One that the particular object of defendant's wire fraud was the City of Niagara Falls's "right to the defendant's honest services, performed free from deceit, bias, self-enrichment, self dealing, concealment and conflict of interest." (Dkt. No. 17 at 4.) That is, defendant created a conflict of interest, and thus a deprivation of honest services, when he failed to report and to stop illegal activity that he knew was occurring, including activity that he was committing himself.

Defendant seeks dismissal of Count One, and correspondingly objects to the portion of the Report and Recommendation addressing it, for two reasons. The first objection is that 18 U.S.C. § 1346 would be unconstitutionally applied to the facts of this case. In short, defendant cites to numerous cases to emphasize that Section 1346 offers little guidance as to what "honest services" means or how defendant could have known in advance what it prohibits. Defendant's second objection is that Count One does not connect his ATM withdrawals to his conflict of interest in any way that would give this Court jurisdiction over that count of the indictment. Specifically, defendant has objected that "the only allegation

4

that purports to bring this alleged scheme within the wire fraud statute is the allegation that a portion of Defendant's salary, which was electronically deposited biweekly in a bank located in Texas, was withdrawn by him from local ATMs on a regular basis and that a portion of those withdrawn funds allegedly was used to purchase cocaine and crack cocaine." (Dkt. No. 22 at 18.) The Government responded that defendant "would not have been able to carry out his illegal purchases without payment. The wire communications in question were directly related to the defendant's procurement of money to purchase drugs, an essential part of the defendant's scheme." (Dkt. No. 28 at 12.)

The Court agrees with defendant that Count One lacks a sufficient connection between defendant's conflict of interest and a use of interstate wire communications. The use of interstate wire communications is a critical element of any honest-services prosecution because Section 1346 does not stand alone as a criminal statute. That is, Section 1346 is not a one-sentence, independent criminal statute that prohibits dishonesty *per se*; it prohibits one particular manifestation of *wire fraud*. *See, e.g., U.S. v. Mittelstaedt*, 31 F.3d 1208, 1216 (2d Cir. 1994) (noting that Section 1346 "amended the mail and wire fraud statutes"). Every element of a wire fraud offense outside of "honest services" lies in 18 U.S.C. 1343, which explains that defendant would be guilty of Count One if and only if he "transmit[ted] or cause[d] to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings,

5

signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice." Regarding how the use of interstate wires must further a fraudulent scheme, "the wire transmission need not be an essential element of the scheme; rather, [i]t is sufficient if that transmission was incident to an essential part of the scheme or a step in [the] plot." *U.S. v. Reifler*, 446 F.3d 65, 95 (2d Cir. 2006) (alteration in the original) (internal quotation marks and citations omitted). Here, the Government has conceded, both at oral argument and in the plain language of Count One, that defendant's wire fraud consisted solely of a conflict of interest involving his sworn duties as a police officer. Any drug purchases or sex crimes, in themselves, are not part of Count One—nor could they be, in light of other counts in the indictment, without raising serious concerns about multiplicity. The conflict of interest, however, arose solely as a result of defendant's failure to disclose known illegal activity to law enforcement officials, or to stop it himself. That failure started and concluded entirely within state borders, without the need for ATM withdrawals that, incidentally, concerned only drug purchases and had nothing to do with aspects of Count One concerning sexual activity. Count One contains no allegations about interstate wire communications detailing a decision to hide knowledge of illegal activity. Consequently, the Court will dismiss Count One as legally deficient in a critical element of wire fraud.

Since the Court has dismissed Count One within the existing framework of Sections 1343 and 1346, it will not address defendant's concerns about the

6

constitutionality of Section 1346. *See Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, *J.*, concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of.").

### *Count Six*

Count Six charges defendant with committing extortion on or about October 7, 2007 under color of official right. According to Count Six, defendant obtained sexual favors from "Victim 4," a prostitute, while on duty. Unlike Counts Two through Five, which relate to forcible sexual conduct against different victims, Count Six states that the sexual activity described therein occurred with consent. Also unlike those other counts, Count Six does not accuse defendant of civil rights violations.

Defendant has objected to Magistrate Judge Scott's recommendation that his motion to dismiss Count Six be denied. Defendant initially made a motion to dismiss Count Six because, he claimed, it "fails to allege—and the government cannot under the pleaded facts show—that Mr. Warme 'obtained property' within the meaning of the Hobbs Act." (Dkt. No. 13 at 13.) In his Report and Recommendation, Magistrate Judge Scott concluded that "[t]he extortion of sexual acts constitutes intangible property as that term is defined for purposes of the Hobbs Act." (Dkt. No. 18 at 14.) This conclusion followed from the analysis that "Warme allegedly did receive something of value from Victim 4" and that

7

"[t]heoretically, Warme could have transferred or sold the service to another (by forcing Victim 4 to perform this service for someone other than himself), but, according to the indictment in this case, utilized the service for himself." (*Id.* at 13–14.) Defendant objects on the grounds that an isolated sexual act that since has concluded cannot constitute "property" because it could not be transferred, assigned, or sold after completion. In response, the Government asserted that "acts of oral sex and sexual intercourse" constitute property. The Government, however, based this assertion on *U.S. v. Gotti*, 459 F.3d 296 (2d Cir. 2006), a case concerning "union members' LMRDA [Labor-Management Reporting Disclosure Act] rights to free speech and democratic participation in union affairs as well as their LMRDA rights to loyal representation by their officers, agents, and other representatives," *id.* at 325.

The Hobbs Act seeks to punish "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion . . . ." 18 U.S.C. § 1951(a). Under the Hobbs Act and the plain language of Count Six, "[t]he term 'extortion' means the *obtaining of property* from another, with his consent, . . . under color of official right." *Id.* § 1951(b)(2) (emphasis added). Defendant does not dispute that Hobbs Act property, in general, can be intangible. Additionally, "[t]he concept of property under the Hobbs Act, as devolved from its legislative history and numerous decisions, is not limited to physical or tangible property or things, but

8

includes, in a broad sense, any valuable right considered as a source or element of wealth and does not depend upon a direct benefit being conferred on the person who obtains the property." *U.S. v. Tropiano*, 418 F.2d 1069, 1075–76 (2d Cir. 1969) (citations omitted).

The problem for the Government, however, is that no court appears to have stretched the concept of "obtaining property" as far as to cover a service that 1) was obtained and exhausted in one occurrence, with no other rights or demands attached to it; and 2) appears to have had no impact on future resources or economic opportunities of any business, legitimate or illegitimate, in part because it occurred only once. As broad as the concept of intangible property under the Hobbs Act may be, it always has related in some way to an alienable economic or contractual right that carries forward into the future. *See, e.g., U.S. v. Ivezaj*, 568 F.3d 88, 92 (2d Cir. 2009) (illegal gambling business); *Gotti*, 459 F.3d at 325 (union members' LMRDA rights); *U.S. v. Arena*, 180 F.3d 380, 393 (2d Cir. 1999) (right "to conduct the business of providing abortions"); *U.S. v. Anderson*, 716 F.2d 446, 450 (7th Cir. 1983) (right of doctor to continue to perform abortions); *U.S. v. Margiotta*, 688 F.2d 108, 134 (2d Cir.1982) (continuation of insurance business);³ *U.S. v. Daley*, 564 F.2d 645, 648 (2d Cir. 1977) (employees' jobs and contractors' future job assignments); *Tropiano*, 418

---

³Overruled by *McNally v. U.S.*, 483 U.S. 350 (1987), which in turn was superseded by Section 1346.

9

F.3d at 1076 (right to solicit rubbish removal accounts). As the United States Supreme Court put it, alleged extortioners have to have "received something of value . . . that they could exercise, transfer, or sell." *Scheidler v. Nat'l Org. for Women, Inc.* ("*Scheidler II*"), 537 U.S. 393, 405 (2003) (internal quotation marks and citation omitted). Here, the "sexual favors" that form the basis of the extortion in Count Six occurred one time, without any of the civil rights violations described in Counts Two through Five. Count Six does not describe a hijacking, a forced transfer, or a forced sale of any of the sorts of economic or contractual rights contemplated in Hobbs Act case law. *See Gotti*, 459 F.3d at 324 n.9. To find extortion anyway would mean that every *quid pro quo* sexual harassment by a public official would violate the Hobbs Act. *But see Sharpe v. Kelley*, 835 F. Supp. 33, 34 (D. Mass. 1993) (suggesting that, without the additional implications for the victim's "contractual job rights and partnership rights," sexual favors obtained by harassment would not constitute property within the meaning of the Hobbs Act). In this case, however, defendant's conduct constituted interference with the victim's ability to service a paying client at that same time. "This did not constitute acquisition in the eyes of the *Scheidler II* Court, we believe, because there was no further intended activity on the part of [defendant], and mere interference with the [victim's prostitution] business, even to the point of getting [her] to cease conducting [her] business altogether, was closer to coercion than extortion." *Gotti*, 459 F.3d at 323–24. As a result, the conduct described in

10

Count Six may constitute other legal violations, but it does not constitute "obtaining property" by extortion within the meaning of the Hobbs Act. "To conclude that such actions constituted extortion would effectively discard the statutory requirement that property must be obtained from another, replacing it instead with the notion that merely interfering with or depriving someone of property is sufficient to constitute extortion." *Scheidler II*, 537 U.S. at 405. Under these circumstances, Count Six cannot stand.

Count Six must fail also because it does not state enough of a connection to interstate commerce to confer jurisdiction on this Court. Because Defendant's objection to Count Six triggered a *de novo* review of the Report and Recommendation with respect to that count, the Court at oral argument questioned the Government's ability to satisfy the interstate nexus requirement for Count Six. "The Hobbs Act makes robbery or extortion (or attempt or conspiracy to rob or extort) a federal crime if that conduct 'in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce.' The Act 'speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence.'" *U.S. v. Jamison*, 299 F.3d 114, 117–18 (2d Cir. 2002) (citations omitted). As broad as the Court's jurisdiction under the Hobbs Act is, however, some trace of a connection to interstate commerce must exist. Establishing a connection is more

difficult when the alleged victim of a Hobbs Act violation is an individual and not a business entity. "[W]e [have] identified circumstances in which the interstate commerce element of the Hobbs Act would be satisfied when the target of the defendant was an individual instead of a business: (i) where the victim directly participated in interstate commerce; (ii) where the defendant targeted the victim because of her status as an employee at a company participating in interstate commerce; (iii) where the assets of a company engaged in interstate commerce were, or would have been, depleted as a result of the harm or potential harm, respectively, to the individual victim; or (iv) where the defendant targeted the assets of a business engaged in interstate commerce rather than an individual." *U.S. v. Wilkerson*, 361 F.3d 717, 729 (2d Cir. 2004) (citation omitted).

This case features none of the *Wilkerson* factors that would support jurisdiction over an alleged Hobbs Act violation affecting an individual victim. Here, Count Six sets forth one instance when defendant obtained sexual favors "not due to him" from a prostitute while he was on duty. Count Six does not state that the incident involved a crossing of state lines during its commission or planning. It does not state that defendant's official duties, as a local police officer, involved interstate commerce. It does not state that the victim engaged in interstate commercial activity—legal or otherwise[4]—or worked extensively for any

---

[4] *See Gotti*, 459 F.3d at 325 (holding that "intangible property can qualify as extortable property under the Hobbs Act regardless of whether its exercise, transfer, or sale would be legal").

12

business entity that did. *Cf. U.S. v. Perrotta*, 313 F.3d 33, 38 (2d Cir. 2002) ("Merely showing employment with a company that does business in interstate commerce, without more, stretches the Hobbs Act too far. Under such a theory, the extortion or assault of anyone who worked in any capacity at any company that participates in interstate commerce would suffice for federal jurisdiction, blurring the boundaries between state and federal jurisdiction.") (citation omitted). In fact, the Government conceded at oral argument that the only evidence that it could offer at trial to satisfy the jurisdictional requirement would be unsubstantiated hearsay statements from the victim to the effect that, sometimes, her prostitution clients tell her that they are visiting Niagara Falls from out of state. The Government thus cannot establish, for example, that the victim "was a direct participant in interstate commerce through [a] business of treating a worldwide celebrity clientele." *U.S. v. Silverio*, 335 F.3d 183, 187 (2d Cir. 2003); *see also U.S. v. Taylor*, 92 F.3d 1313, 1333 (2d Cir. 1996) (affirming Hobbs Act convictions where the extortionate activity in question "interfered with interstate commerce both directly, because some of the construction projects targeted involved airports, highways or government buildings, and indirectly, by depleting the funds available to the targeted contractors for the purchase of goods and supplies in interstate commerce") (citations omitted). Under these circumstances, the Government's inability to satisfy the jurisdictional requirement of the Hobbs Act is another reason to dismiss Count Six.

***Motion for Severance***

Apart from his objections to the Report and Recommendation, defendant has made a motion to sever Counts Two through Six[5] from the other counts in the indictment for trial purposes. In support of his argument, defendant notes that Counts Two through Six concern allegations of sexual misconduct, while the other counts in the indictment pertain to violations of drug and weapons statutes. Through the motion papers filed on October 13, 2009, defendant has outlined in some detail that he wants to testify to rebut Counts Two through Six, and what that testimony would be. In contrast, "Defendant chooses not to testify on the drug and gun counts. There, cooperating Government witnesses with checkered backgrounds and the beneficiaries of Government deal making, will allege Defendant used powdered and crack cocaine and attempted to possess an altered firearm. The Government's case is 'historical' without any backup to corroborate the testimony of these witnesses. Deponent [i.e., defendant] believes it is best to let the jury decide whether these witness's [sic] stories are believable, without hearing from the Defendant." (Dkt. No. 23 at 5.) In opposition, the Government argues that defendant has not shown prejudice beyond a desire to testify about some counts and not about others. The Government argues further that "this case *does not* involve separate and distinct offenses, but rather involves

---

[5]Now Counts Two through Five, since Count Six has been dismissed.

14

overlapping offenses, all of which were logically related to and were an outgrowth of the defendant's position as a police officer." (Dkt. No. 26 at 11.)

"If the joinder of offenses . . . in an indictment, an information, or a consolidation for trial appears to prejudice a defendant . . ., the court may order separate trials of counts . . . or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). "In order to prevail, the defendant must show not simply some prejudice but substantial prejudice." *U.S. v. Werner*, 620 F.2d 922, 928 (2d Cir. 1980). This Court may order separate trials for the remaining counts against defendant if he "makes a convincing showing that he has both important testimony to give concerning one [set of counts] and strong need to refrain from testifying on the other." *U.S. v. Sampson*, 385 F.3d 183, 191 (2d Cir. 2004) (citation omitted). "In making such a showing, it is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of 'economy and expedition in judicial administration' against the defendant's interest in having a free choice with respect to testifying." *Baker v. U.S.*, 401 F.2d 958, 977 (D.C. Cir. 1968), *quoted in Sampson*, 385 F.3d at 191. Here, defendant's testimony at trial, if believed by the jury, would establish that each of the acts mentioned in Counts Two through Five were consensual. Consent to these acts, if established, would constitute a complete

defense to these counts to the extent that they rely on proving coercion. Consequently, defendant's testimony about these counts is sufficiently important that he should be allowed to present it to a jury without the risk of waiving his Fifth Amendment rights for the other counts. The Court thus will grant defendant's motion in its entirety.

## CONCLUSION

For all of the foregoing reasons:

1)	The Court grants defendant's motion to dismiss Count One of the indictment. Defendant's motion to strike language from Count One is denied as moot.

2)	The Court grants defendant's motion to dismiss Count Six of the indictment.

3)	The Court adopts the Report and Recommendation with respect to Count Eight, and denies defendant's motion to dismiss that count for the reasons stated in the Report and Recommendation.

4)	The Court grants defendant's motion for severance, and will hold separate trials for Counts Two through Five and Seven through Eleven at dates and times to be determined.

The parties are directed to appear before the Court on **Friday, January 8, 2010 at 9:00 a.m.** for a status conference.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: January 7, 2010